IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 15-cv-00076-RBJ

TAWNYA WESTBY,

  Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign corporation,

  Defendant.

---

## ORDER

---

  This matter is before the Court on defendant State Farm Mutual Automobile Insurance Company's ("State Farm") motion for summary judgment [ECF No. 16].  For the reasons described below, the motion is denied.

## FACTS

  This case arises out of a car accident where plaintiff Tawnya Westby and Minnie Burn collided while driving in Denver.  ECF No 16 at 1.  Westby sustained injuries.  *Id.*  The following facts and timelines are undisputed unless otherwise noted.

<u>Underlying accident and bodily injury claim</u>

- December 1, 2009**:** Westby and Burns are involved in a car crash.  *Id.* at 1.

- October 23, 2012: Westby sued Burns in Denver District Court (2012 CV 6513), claiming that Burns' negligence caused the accident.  ECF Nos. 18 at ¶ 1; 16 at ¶ 9.

1

- December 2012: With the consent of Westby's insurer, State Farm, Burns and Westby settled for $25,000, which was the amount of the statutory minimum liability insurance coverage that Burns carried through her insurer Titan Insurance Company ("Titan"). *Id.* at ¶¶ 5, 10, 19; ECF No. 18 at 1.

- December 26, 2012: Titan, through its attorney and paralegal, sent a letter to Westby's attorney Richard Kaudy. ECF No. 18-3 at 1. Titan enclosed two documents: (1) "a Full and Final Release of All Claims" (the "Release") against Titan and (2) a proposed "Stipulation for Dismissal with Prejudice" (the "Stipulation"). *Id.* Titan also sent a check for the settlement amount of $25,000. *Id.*; ECF No. 16-1 at 3. The letter instructed Kaudy to "review these documents and, if they meet with your approval, have them signed and notarized as necessary and return them to our offices." *Id.* The letter also stated, "[p]lease do not disburse the settlement funds until all settlement paperwork has been returned to [Titan's] office." *Id.*

- December 28, 2012: Kaudy deposited the check "in a COLTAF [Colorado Lawyer Trust Account Foundation] trust account maintained by [him] at Compass Bank." ECF No. 16 at ¶ 14.

- January 2, 2013: Kaudy signed the Stipulation and returned it for filing at the Denver District Court. ECF No. 16-1 at 6. The Stipulation stated that Westby's claims against Burns were to be dismissed with prejudice. *Id.* The court filed the Stipulation and entered an order dismissing the lawsuit against Burns on that same day. ECF No. 16 at ¶¶ 15–16.

- February 7, 2013: Westby signed the Release. ECF No. 16 at ¶ 17.

- March 30, 2013: Kaudy disbursed the funds to Westby. *Id.* at ¶ 18. She received $3,860.70 after the deduction of attorney's fees, liens, and medical bills. ECF No. 18-5 at 1.

Underinsured Motorist Claim

Westby's medical bills exceeded the amount that she received from the settlement with Titan. ECF No. 16 at 13. Therefore, she submitted a claim to her own insurer, State Farm, for "underinsured motorist" (UIM) insurance benefits. *Id.* at 2. Her policy included a UIM limit of $250,000. *Id.* at ¶ 7. Kaudy and State Farm negotiated over the UIM claim. *Id.* at ¶ 20. As the following timeline demonstrates, the two sides came close to settling. *See* ECF No. 16-1.

- August 2013: State Farm made an initial offer of $137,273.43.  Snyder-Jones Affid. ECF No. 16-1 at 14 ¶ 3.  Kaudy did not respond.  *Id.* at ¶ 4.

- October 2013: State Farm renewed its offer of $137,273.43.  *Id.*

- November 2013: Kaudy made a demand for $200,000.  *Id.* at ¶ 5.  Following that demand, the two sides exchanged a series of counteroffers to try to settle the matter.  *Id.* at ¶ 6.  When they reached impasse, State Farm was offering $147,500 and Westby was demanding $160,000.  ECF Nos. 18-6 at 1; 18 at ¶ 7.

- January 15, 2014: State Farm sent a check for $137,273.34 to Kaudy with a letter explaining that "the basis for the payment" was the initial offer amount from August 2013.  ECF No. 16 at ¶ 20.  From what the Court can discern, that check was never cashed.

- October 2014: Kaudy called State Farm and left a message communicating that he had "additional information about [Westby's] injury claims for [State Farm] to consider in its evaluation of the UIM claim."  ECF No. 16 at ¶ 21.  State Farm claims it never received any additional information.  *Id.* at ¶ 22.

- January 12, 2015: A State Farm representative called Kaudy to inform him that "no additional UIM benefits were owed to [Westby] because the two year statute of limitations deadline for commencing an action for UIM benefits had expired."  *Id.* at ¶ 23.  Kaudy responded that he did not believe the statute of limitations had expired.  *Id.*  at ¶¶ 24–25.

- January 12, 2015: Westby (through Kaudy) filed this action.  *Id.* at ¶ 25.

Westby's sole claim is that State Farm "breached the contract of insurance by not paying UIM benefits in an amount which she believes she is entitled to receive."  ECF No. 16 at 2.  As an affirmative defense, State Farm asserts that Westby did not file this action within the time required by both the applicable statute of limitations, C.R.S. § 13-8-107.5(1)(b), and the insurance policy, so she is therefore barred from claiming UIM benefits.  *Id.* at ¶ 26.  State Farm now moves for summary judgment on that issue, asking the Court to determine as a matter of law that the statute of limitations bars Westby's claim.  ECF No. 16 at 16.

## ANALYSIS

### I.      Standard of Review.

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the nonmoving party. *Concrete Works of Colorado, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

### II.      The Court's Role.

The Court's jurisdiction in this matter is founded on diversity of citizenship. 28 U.S.C. § 1332(a). As a federal court sitting in diversity jurisdiction, this Court applies Colorado choice-of-law principles to determine what substantive law to apply. *Sellers v. Allstate Ins. Co.,* 82 F.3d 350, 352 (10th Cir.1996). In Colorado, insurance policies are generally interpreted under the law of the state where the policy was issued.[1] *Id.* The Court's duty is thus "to ascertain and apply the most recent statement of state law by the state's highest court. Although [the Court is] not

---

[1] The record does not affirmatively show that Westby's State Farm insurance policy was issued in Colorado. However, both parties rely on Colorado law, and the Court will do the same.

4

required to follow the dictates of an intermediate state appellate court, [it] may view such a decision as persuasive as to how the state supreme court might rule." *Id.* (internal citations and quotations omitted).

### III.   Relevant Statutory and Policy Language.

Under Colorado law, an insured generally must commence an action arising out of a UIM claim "within three years after the cause of action accrues." C.R.S. § 13-80-107.5(1)(b). However, if the underlying bodily injury claim is properly "preserved," then the UIM claim is timely if it is "commenced . . . within two years after the insured *received payment* of the settlement or judgment on the underlying bodily injury liability claim." *Id.* (emphasis added). An insured can preserve a claim by either filing an action against the underinsured motorist, or if no action is filed, receiving payment of a settlement or judgment in the underlying bodily injury claim. § 13–80–107.5(1)(b). Both routes to preservation must occur within three years of the accident. *Id.*; § 13-80-101(1)(n)(I). Here, it is undisputed that Westby properly preserved her bodily injury claim against Burns: it was filed on October 23, 2012, which is less than three years from the date of the accident on December 1, 2009.

Consistent with § 13-80-107.5(1)(b), Westby's State Farm insurance policy ("the Policy") also addresses the statute of limitations for bringing a UIM claim.[2] It provides, in relevant part, as follows:

> Legal action may not be brought against us regarding Uninsured Motor Vehicle Coverage until there has been full compliance with all the provisions of this policy.

---

[2] The excerpt of the Policy references claims for *uninsured* motor vehicle coverage. Westby is trying to collect *underinsured* motorist benefits from State Farm. However, both parties submitted the same portion of the Policy to the Court, and both agree that it governs the statute of limitations for an underinsured motorist claim. Therefore, the Court has no reason to believe that this policy language is inapplicable to the case at hand.

In addition, legal action may only be brought against us;

2.      For damages sustained in an accident with an uninsured motor vehicle, after the insured or that insured's legal representative presents an Uninsured Motor Vehicle Coverage claim to us and files a lawsuit in accordance with the Deciding Fault and Amount provision within the later of:

      a.      three years immediately following the date of the accident; or

      b.      two years immediately following the date that the insured or that insured's legal representative:

            (a)      received payment of the settlement or judgment in the underlying bodily injury liability claim; and

            (b)      has filed a timely lawsuit against the owner or driver of the uninsured motor vehicle.

ECF No. 18-1 at 1 (emphasis omitted).

### IV.      Interpretation of the Term "Received Payment."

The parties agree that Westby's UIM claim can only be timely if it was brought within two years of when she received payment from Titan. However, the parties disagree upon the meaning of the term "received payment," thereby disputing when the two-year statute of limitations began to run. ECF Nos. 18 at 4; 16 at 16. The resolution of this issue turns on the Court's interpretation of "received payment." The Court finds that Westby's UIM claim is timely because Westby received payment no earlier than February 7, 2013, which is less than two years before the filing of the UIM claim on January 12, 2015.

Under Colorado law, "[t]he interpretation of an insurance policy is a matter of law" to be decided by the Court.[3] *Allstate Ins. Co. v. Huizar,* 52 P.3d 816, 819 (Colo. 2002). Courts must

---

[3] The Court conducts its analysis under principles of insurance contract interpretation rather than the tenets of statutory interpretation because the Policy is more specific than the statute in that it states that

give effect to the intent and reasonable expectations of the contracting parties. *Hoang v. Assurance Co. of Am.,* 149 P.3d 798, 801 (Colo. 2007). "When the terms of an insurance policy are not defined, we give those words their plain, ordinary meanings and interpret them 'according to the understanding of the average purchaser of insurance.'" *Roinestad v. Kirkpatrick*, 300 P.3d 571, 574–75 (Colo. App. 2010), *rev'd sub nom. on other grounds*, *Mountain States Mut. Cas. Co. v. Roinestad*, 296 P.3d 1020 (Colo. 2013). Courts must enforce the plain language of the policy unless it contains an ambiguity. *Hoang*, 149 P.3d at 801. "We determine ambiguity based on the facts and circumstances of the particular case before us." *Roinestad,* 300 P.3d at 575 (internal citation omitted). If the policy is ambiguous, the interpretation "which is most favorable to the insured will be adopted." *Finding v. Ocean Acc. & Guarantee Corp.*, 177 P. 142, 143 (Colo. 1918).

The parties only submit two pages of the Policy (it appears to be four pages in total), but neither the excerpted portion of the Policy nor the statute defines "received payment." Therefore, the Court must give "received payment" its plain and ordinary meaning. The verb "receive" is defined as "[t]o take (something offered, given, sent, etc.); to come into possession of or get from some outside source." *Black's Law Dictionary* (10th ed. 2014) *available at* Westlaw. Black's Law Dictionary defines payment as (1) "performance of an obligation by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation" or (2) "the money or other valuable thing so delivered in satisfaction of an

---

the two-year period begins on the date that either the insured or the legal representative "received payment." That distinction is relevant to the parties' present dispute over the meaning of "received payment."

obligation." *Id.* I find these definitions to be too general to clarify the term's meaning under these particular circumstances.

State Farm contends that the Policy clearly states that the statute of limitations begins to run on the date that either the insured or the insured's legal representative receives payment. ECF No. 19 at 3–4. Defendant alleges that there is no dispute that Kaudy was Westby's legal representative. *Id.* at 4. Therefore, State Farm argues that the term "received payment" is unambiguous because "it cannot reasonably be disputed" that Kaudy received payment on December 28, 2012 when he deposited the $25,000 check into his COLTAF trust account. [4] *Id.* Defendant also notes in passing that Westby "arguably" received payment when the check was sent to Kaudy on December 26, 2012. ECF No. 16 at 8. State Farm claims that because Kaudy filed the UIM claim against State Farm on January 12, 2015, which is more than two years after December 28, 2012, the statute of limitations bars Westby's claim. ECF No. 16 at 16.

In contrast, Westby argues that the State Farm policy language is ambiguous and can support "two reasonable but different interpretations." ECF No. 18 at 4. Westby testifies that she interprets the Policy to mean that she could receive payment after "she accepted the terms and conditions of the Titan Release." *Id.* at 4. She does not believe that she could receive

---

[4] In Colorado, attorneys are required to maintain client trust accounts "separate from any business and personal accounts" where the attorney must deposit "all funds entrusted to the lawyer's care and any advance payment of fees that have not been earned or advance payment of expenses that have not been incurred." A lawyer shall not be required to maintain a trust account when the lawyer is not holding such funds or Colo. RPC 1.15B(a)(1). Such an account may be a COLTAF account, which "is a pooled trust account for funds of clients or third persons that are nominal in amount or are expected to be held for a short period of time[.]"*Id. at* 15B(b). Any interest paid on "a COLTAF account shall be paid to COLTAF, and the lawyer and the law firm shall have no right or claim to such interest or dividends." *Id.*

payment on "any other artificial dates of transmission of funds to be held in escrow pending her acceptance of the Release terms." *Id.*

The parties also disagree about the impact of the language in Titan's December 26 letter to Kaudy. State Farm argues that the language was merely a request that the funds not be disbursed until the paperwork was signed and returned. ECF No. 16 at 14. Defendant attests that "[t]here is nothing in the documents . . . that *required* [Westby] to sign a Full and Final Release before she received payment of the settlement." *Id.* (emphasis added). Westby contends that she was ineligible to receive payment of the settlement funds until "she accepted the terms and conditions set forth in the proposed Release." ECF No. 18 at 4, ¶ 5. She claims that Titan's own "restrictive conditions" created the dynamic whereby neither she nor Kaudy could receive payment of the settlement funds until after she "agreed to the terms and conditions of the Release proposed by Titan[.]" *Id.* at ¶ 9.

Furthermore, the parties dispute the applicability of a recent Colorado Court of Appeals case, *Stoesz v. State Farm Mutual Automobile Insurance Company,* 2015 WL 3776869 (Colo. App. 2015), where the court interpreted the meaning of "payment" in regards to the preservation of an underlying bodily injury claim pursuant to § 13-80-107.5(1)(b). ECF Nos. 18 at 8–9; 19 at 8–10. The *Stoesz* Court determined that the term "payment" was unambiguous, and that a settlement agreement did not constitute "payment." WL 3776869, at *3–4. State Farm now argues that *Stoesz* is consistent with its position that Westby could not have "received payment" on February 7, 2013 when she signed the Release and thereby accepted the terms of the settlement. ECF No. 19 at 9. However, the *Stoesz* Court interpreted another term from the one

9

at issue here, and it did so in an entirely different context.[5]  Accordingly, the Court does not find

the *Stoesz* interpretation of "payment" to control here.

At this point in the analysis, the appropriate inquiry is whether "received payment" is

ambiguous when applied to the facts of this case.  A disagreement between the parties regarding

the meaning of a term does not, by itself, constitute an ambiguity.  *Ad Two, Inc. v. City and

County of Denver ex rel. Manager of Aviation,* 9 P.3d 373, 376-77 (Colo. 2000) (internal citation

omitted).  Despite the parties' divergent interpretations, I conclude that the term is unambiguous.

Under these circumstances, the Court need not define the term or identify the exact date on

which Westby "received payment."  The controlling matter is that Westby was not legally

entitled to receive funds any earlier than February 7, 2013 when she signed the Release.  The

alternative that the defendant proposes—that "received payment" means the date on which

Kaudy deposited the funds into his COLTAF account—is unreasonable because of Titan's "do

not disburse request" and the basic operation of a settlement agreement.

---

[5] "Subsection (1)(b) uses both 'payment' of a settlement and 'received payment' of a settlement."  WL 3776869, at *3.  The definition of the word "payment" is relevant to the issue of preservation, while the meaning of the term "received payment" applies to the issue of whether an insured files a timely UIM claim once preservation has occurred.  The *Stoesz* Court reasoned that "[t]he General Assembly is presumed to have intended a difference between [the two usages]."  *Id.*  The issue in *Stoesz* was whether the insured had properly preserved the underlying bodily injury claim.  As discussed above, an insured can only exercise the two-year exception to the statute of limitations if the underlying bodily injury claim against the underinsured motorist was properly preserved.  The *Stoesz* plaintiff did not file an action against the underinsured motorist, so "preservation depend[ed] on whether 'payment' of 'the liability claim settlement' occurred within the three-year limitations period by virtue of the settlement agreement."  *Id.* at *2.  The plaintiff had sent an email to her insurer confirming their settlement agreement about a week before the three-year anniversary of the car accident.  *Id.* at *1.  The plaintiff argued that she had preserved the underlying claim because she "entered into a settlement agreement" on the date that she sent the e-mail to her insurer.  *Id.*  But the insurance company did not approve the settlement or issue the check until after the three-year window had passed.  *Id.*  The *Stoesz* Court held that the settlement agreement did not constitute "payment."  *Id.* at * 4.  Therefore, because the underlying bodily injury claim was not preserved, the insured could not exercise the two-year extension of the general three-year statute of limitations.  *Id.* at * 1.

First, Titan's December 26 letter clearly asked Kaudy to wait to disburse the funds until after "all the settlement paperwork" had been returned to Titan's office.  ECF No. 16-1 at 4.  The paperwork included the Release, which was a covenant not to sue and a full release and discharge of both Burns and Titan from "any and all claims" resulting from the car crash between Westby and Burns.  ECF No. 16-1 at 9.  I interpret the language in the letter as Titan's saying to Kaudy, "here, please keep this money in your client trust account until the settlement is finalized."  An attorney's deposit into a client trust account essentially holds the money in escrow, to be disbursed to the client after the occurrence of some condition.  Titan could have easily kept the $25,000 in its own account until the settlement paperwork had been signed and returned.  Under that scenario, Titan would have disbursed the funds at some point after Westby had signed and returned the settlement paperwork.  Additionally, State Farm's argument that the letter was merely a request rather than a requirement does not change the Court's reasoning.  The Court finds that the ordinary person would have interpreted the request from Titan to Kaudy about waiting to disburse the funds to be a condition precedent to the disbursement.  Put differently, the average individual in either Kaudy or Westby's shoes would have read the letter and believed that no payment could be received until after the insured had returned the paperwork.

Second, the very nature of a settlement dictates that neither Westby nor Kaudy could have received any money until the settlement was final.  A settlement is "an agreement ending a dispute or lawsuit."  *Black's Law Dictionary* (10th ed. 2014) *available at* Westlaw.  Such an agreement involves one party accepting a benefit—typically in the form of cash—in exchange for releasing the other party from future claims or suits.  Westby attests that "there would not and

could not have been any settlement with Titan Insurance Company if [she] did not agree to the terms and conditions of the Release[.]" Westby Affid. ECF No. 18-17 at ¶ 10.  I agree.  It is a matter of common sense that the insured cannot receive settlement funds until after the parties have completed the settlement because up until the moment that the agreement is finalized, the insured is not legally entitled to any money.  In order for the claim to settle, Westby needed to sign the Release.  Defendant presumes that Kaudy had "reviewed and approved the Release" when he filed the Stipulation to the Denver District Court on January 3, 2013.  ECF No. 19 at 7.  However, Kaudy's filing of the Stipulation is irrelevant here.  The only impact of that filing was to dismiss the bodily injury claim against Burns.  The filing of the Stipulation did not mean that Westby had agreed to the terms of the Release, thereby releasing Titan from future claims and becoming entitled to the settlement money.

Defendant emphasizes that the statute of limitations begins running when either the insured or her legal representative receives payment.  ECF No. 19 at 4.  That distinction does not change the Court's analysis because Westby had not yet agreed to the settlement terms on December 28, 2012.  Under State Farm's theory, Westby could have had a change of heart regarding the settlement, opted not to sign the Release, and still have been able to access the funds because Kaudy had already "received payment" when he deposited the check. [6]  That

---

[6] Defendant also discusses C.R.S. § 4-3-310(b)(1), which governs the effect of an uncertified check that is taken for an obligation, in support of its argument that the "liability settlement check from Titan was honored and paid on presentment, thereby ending its conditional nature and making it an absolute payment at that time." ECF No. 16 at 11.  However, this provision is not relevant.  The check cashed just fine when Kaudy deposited it on December 28, 2012, so there is no issue here about whether Titan's check was dishonored.  It is clear that an uncertified check can suspend a debt or an obligation in the same manner as a cash payment.  That is not of concern here.  The problem here is that Westby was not legally entitled to receive any money until the settlement paperwork was completed, thereby finalizing Titan's obligation to Westby.  State Farm also relies heavily on two cases from Connecticut's state

scenario leads to an absurd result and runs counter to the basic principles of settlement agreements: funds are proffered after a settlement is finalized when the insured receives the money in exchange for releasing the insurer from future claims.

I note that Kaudy did not actually disburse the money until March 20, 2013.  ECF No. 16-1 at 13.  Westby alleges that "subrogation issues prevented [her] from actually receiving payment until March 30, 2013."  ECF No. 18 at ¶ 6.  Plaintiff states that "those delays were both out of her, and State Farm's control."  *Id.* at 5.  Defendant raises a concern that if "received payment" means the date of disbursement, then an attorney could delay disbursement and thereby "impermissibly" extend the statute of limitations.  ECF No. 16 at 14, 15.  I decline to address this concern because the date of disbursement does not change my conclusion.  *See Cacioppo v. Eagle Cnty. Sch. Dist. Re–50J,* 92 P.3d 453, 467 (Colo. 2004) (declining to answer "a hypothetical question about possible future interpretations to the law").  Irrespective of when the settlement funds were disbursed, Westby could not have received payment any earlier than February 7, 2013 when she signed the Release and became legally entitled to the money.  This case was filed on January 12, 2015, which is less than two years after Westby could have first "received payment."  Because it finds that the statute of limitations had not run, the Court denies defendant's motion for summary judgment.

---

appellate courts, *Scalise v. American Employers Insurance Company,* 67 Conn. App. 753 (Conn. App. 2002) and *Holick v. Allstate Insurance Company,* 2009 WL 2506664, at *1 (Conn. Super. 2009) (unpublished) in support of its position that Westby received payment when Kaudy deposited the check. ECF No. 16 at 8–13.  I do not find these cases to be persuasive.

**ORDER**

For the reasons described above, defendant's motion for summary judgment [ECF No.

16] is DENIED.

DATED this 8th day of February, 2016.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge